Beverly Pohl, Nelson Mullins Broad & Cassell, Appellate, FedNat Holding Company This case presents a smorgasbord of federal jurisdictional issues. The Supreme Court has said there is no hierarchy of jurisdiction, so a court can consider subject matter jurisdiction first, or if those issues are thorny and a case needs to be dismissed for lack of personal jurisdiction, the court can go there and avoid the subject matter question. I'm going to probably argue them in the traditional way, but I wanted to make that point because personal jurisdiction argument is particularly strong here. Because the appellee has raised the issue of this court's jurisdiction, in other words, is this appeal moot, I feel like I should start there because the court has to start there in its own analysis. And quite simply, this case is not moot. Everything that the appellee put in the record in its argument for mootness demonstrates that the injunction that was imposed by the arbitrator has not been fully performed. And there's really no authority for the notion that substantial performance of an injunction renders a case moot. And that is true both in the record and factually based on my recent inquiry. But even if the injunction had been fully performed, the case is not moot. And the reason for that is the question is whether the court can grant meaningful relief, despite the fact that the name change might have been fully effectuated. And the simple answer is yes, because the relief that we are seeking is to vacate the judgment below. We argue that the district court had no jurisdiction over this case. And so if this court can undo that, that is the most meaningful form of relief. The other thing that we need is we would like to be able to move to vacate the award. And there is no motion to vacate in this Minnesota district court. It was only a motion to confirm with defensive arguments. And it's undisputed that we have not fully complied with the injunction a year after the award was entered. And the injunction itself said complete this within 90 days. So we are in jeopardy of some sort of lawsuit from Federated Mutual if we don't succeed in getting this judgment vacated. That's the meaningful relief that the court can grant to us. And it doesn't have to be full relief. The court, if it can grant partial relief, that's enough to defeat an argument of appellate mootness. So moving on to the district court's jurisdiction, the conflict issue that brings us here, and it's interesting and the appellate courts disagree, is whether the Supreme Court's decision in Vauden in 2008 changed the legal landscape on the question of how a court assesses its own jurisdiction where there's a petition to confirm or vacate an arbitration award. And we say that Vauden was not a change in the law with regard to motions to confirm or vacate because it simply didn't address sections 9, 10, or 11 of the Federal Arbitration Act. Vauden's majority was very careful to circumscribe its decision around the language of Section 4, dealing with a petition to compel arbitration. It said over and over, the text of Section 4 drives our decision here. And the text of Section 4 is decidedly different than the text of Section 9, 10, and 11. There is no textual basis to conclude that Vauden's look-through analysis applies in the context of this case. We say, I mean, actually before Vauden, I think it's important to note, because I've sort of suggested to the court that the majority rule post-Vauden is that the look-through argument does prevail. But I think it's important to look historically before Vauden, the 2nd, 3rd, 6th, 7th, 9th, and D.C. circuits all had held that you can't look through to the substance of the underlying controversy in order to determine federal jurisdiction when you move to vacate or confirm an arbitration award. That's a pretty large number of circuits. Subsequently, since Vauden, 3 have concluded that Vauden changed the landscape, and 2, the 3rd, and the 7th have concluded that no, it didn't do anything because the language of Section 4 was so important to that decision. I think that one of the aspects of the Vauden majority decision that gets overlooked in the post-Vauden cases to some extent is its emphasis that the well-pleaded complaint rule is alive and well. And if you look at the petition to confirm in this case, it does not present any federal issue. Federated Mutual only sought to confirm the favorable part of the arbitration award, and the favorable part of the arbitration award was purely a contract-based claim. In fact, in the petition to confirm, they assert diversity as the first basis for federal jurisdiction and only throw in federal questions second, saying that the underlying dispute involved a federal question, but not the dispute that was in existence at the time the arbitration award was entered. I'm going to address diversity separately, but the well-pleaded complaint rule tells you, you look at the petition, which substitutes for a complaint in this instance, and if there's no federal issue there, it does not arise under the laws of the United States, and federal question jurisdiction is absent. That's what the 3rd concludes, that's what the 7th concludes, and that's what the 6th and 9th and D-C circuits all concluded prior to Vodden. That is the majority rule, and that's the rule that we would like this court to adopt. We submitted- But now, one key to the Vodden case is that Section 4 does not expand jurisdiction or create jurisdiction by itself, right? It does not. Right. And so, if you said that look-through doesn't work, then wouldn't you be saying that Section 4 does create jurisdiction? Do you follow that? I understand that, and it's kind of- Several circuits have said that. I was trying to elipse it. Yeah, I mean, I think you have to say that the language that says, you look to the controversy, save for the fact of the arbitration clause, because there's nothing else. There's nothing else before the court at that point, other than what the existing controversy is. And somebody, one of the parties, doesn't want to file a lawsuit. They want to arbitrate. And the Supreme Court said, they shouldn't have to file a lawsuit, just so the district court can then send it to arbitration. They can move to compel, and if the dispute is a federal one, then the federal court can compel arbitration. That's a very different status or stage of the proceeding. That really promotes the Section 2 federal policy in enforcing arbitration agreements. Where we are now in this case, the arbitration agreement has already been enforced. There's been an arbitration. The question is what court can then either confirm or vacate that. And, you know, as long ago as 1983, in Moses Cone, the Supreme Court dropped a footnote, footnote 32, which often gets quoted. And it often gets quoted for the statement that the Federal Arbitration Act is somewhat of an anomaly, because it's a federal law, but it doesn't create federal jurisdiction. But it also has a statement that state courts have an important role to play. And that important role is echoed throughout the Supreme Court's subsequent cases, and it's even echoed at Votted, acknowledging that the state courts play a very important part in effectuating the intent of the FAA. So I started to mention that we filed supplemental authority, a Supreme Court case, which on its facts is very different and not helpful, but it had language that I think is very important here. And it says, if courts felt free to pave over bumpy statutory text in the name of more expeditiously advancing a policy goal, basically we would not be giving effect to congressional intent. Because we don't know why Congress may have allowed a look-through in Section 4, but not in the other sections. Maybe it was some sort of compromise. But in this very recent case that came out in 2018, they're saying policy is not what it's about. You look at the text, and the text simply doesn't support any kind of look-through in Section 9, 10, or 11. Counsel, I agree that that's the most interesting issue, but why don't we have diversity jurisdiction? I'm sorry? Why is there not diversity jurisdiction? There's not diversity jurisdiction because the amount in controversy was challenged,  Once it is challenged, it becomes an evidentiary showing. And it has to have some meat in the record, and there is absolutely nothing. Their first argument was that they didn't have to put on any evidence because the court had to take their allegation as true. And that's true if it's not challenged. But once it's challenged, they have the burden to demonstrate the $75,000 amount in controversy. And what argument did they make? They made the argument that their attorney's fees ought to be taken into consideration. And, frankly, I think both parties overlooked this in their briefing, but the coexistence agreement had a waiver of attorney's fees. Counsel, doesn't it have to appear to a legal certainty that the amount in controversy is less than $75,000? But that's true, but there's no evidence, no evidence that it meets it. So how can you say that it's anything other than insufficient if they put on no evidence whatsoever that it's met? You know, I understand there's an inclination to think two large companies have a dispute. It must mean more than $75,000. One is listed corporation, right? That's in your corporate disclosures. I'm sorry, what? One is a listed corporation. It's on NASDAQ, right? Yes. Yes. Boy, that gets a long way down the road, doesn't it, Counsel? But there's no evidence. $75,000? I mean, you know, $75,000? There's no evidence to support any number, none. That's the important thing. Except the attorney's fees. What about our capital indemnity case, capital indemnity versus miles? It sounds like attorney's fees can be considered. Are you familiar with that case? Attorney's fees can be considered when they are at stake in the litigation. They weren't at stake here. The parties waived attorney's fees in Article VI, Section B of the Coexistence Agreement, and that's found at the addendum, page 41. Attorney's fees are off the table. How about the value of the injunction? Nobody knows what the value of the injunction is. FedNet did not sell policies in Minnesota.  Isn't there a little bit of evidence in the hundreds of misdirected calls and correspondence each year due to similarity names? Misdirect? A little bit. That evidence is there, or at least that argument is there, but there's nothing to suggest that Federated Mutual lost one client or one potential client as a result of this name and the possible confusion. I'd like to move on because time is running out. Well, I want to ask you quickly, is this a clear error standard, yes or no? Yes, it is a clear error because there's no evidence. You can go to your next argument now. It's clearly erroneous. I'd like to turn to personal jurisdiction because it's a very powerful argument here and the court could decide. I was surprised you didn't start with that. Well, you know, I just decided to start anyway. So why isn't the choice of law provision and the fact that your client benefited in Minnesota enough that your client should have anticipated being hailed into a court in Minnesota? Let me tell you, there's one affidavit of record on the subject of minimum context, and the list is long, that Federated National had no minimum context in Minnesota. That's found at 154 of the record, and there's no contrary evidence. And the cases are clear that a mere choice of law provision on its own is not enough. And the other two things that the district court relied on, one is an error of law and one is an error of fact. For example, he said that the performance of the agreement would affect petitioner in Minnesota, and that is not the legal test. The best example of that is the Supreme Court's recent case in Walden v. Fiori. It was a Bivens action. There was an event that took place in Georgia. The plaintiffs were injured. They lived in Nevada. They tried to bring their Bivens action in Nevada. And the court was very clear that, no, it's not whether they are going to suffer some effect in Nevada. The question is whether the Bivens defendant ever purposefully availed himself of anything to do with Nevada, and the answer was no, and that's what the record is here. This agreement was not negotiated in Minnesota. We never went to Minnesota. We sell no policies there, no office there. It's the regular laundry list of no minimum contacts, no bank account, no mailing address, no service of process agent, you name it. There is no minimum contact with Minnesota. And so the three factors that the district court relied on, one is admittedly not enough under the law, one is a legal error under Walden v. Fiori, and the other that the agreement contemplated seven years of communications is not borne out by the record because the agreement contemplates no further communications at all. Very well. Thank you, Ms. Pohl. Thank you. For all these reasons, we think that this court has jurisdiction and it should vacate the district court's decision because it had no jurisdiction. May it please the court. I'm Ruth Rivard, and I represent the Appellee Federated Mutual. So the outcome of this appeal may have little practical consequences. I know we talked about the mootness, and if FEDNAT had decided it was not going to go back to its old name, then here there would be no consequences for this appeal. But based on FEDNAT's reply, it now appears that FEDNAT is contemplating returning to the very same bad and unfair behavior that led to the breach of agreement and led to this arbitration. For this reason, we ask the court to affirm the confirmation award by the district court. Counsel, can I direct you to the personal jurisdiction issue? Absolutely. Because it appears to me that all the law is against you. So tell me how there's personal jurisdiction. I disagree. I respectfully disagree, Your Honor. Of course. Go ahead. Tell me how. So looking back at Burger King, which has been around for a very long time, and St. Paul Fire and Marine, I think that gives us some direction. Both of those cases say you don't have to have a physical contact with the state. That's true. Do you have to have minimum contacts? Minimum contacts. Tell us what the minimum contacts are. Yes, excuse me, Your Honor. Minimum contacts. Yes. But it does not have to be a personal contact. And in Burger King, they talk about the fact that now, you know, and this was back in 1985, it's gotten even more so, I believe, now, is communication is by e-mail. Communication is by telephone. People generally don't, even in the same city, show up in the same office. So I think that is why the courts have come away from having to have this personal contact of visiting the state. But they can't even sell policies in this state, right? They go to jail if they try to sell insurance in Minnesota, right? That's correct. However, Federated Mutual has policies nationwide, and so the companies interact nationwide. But here, we look at looking at Burger King and looking at St. Paul Fire and Marine, neither of those had contacts. The defendants did not have contacts with the state. They didn't visit the state. They weren't working in the state other than with a plaintiff. And so we looked at those cases. Those are our best cases. But the most recent case is Walden versus – I'm sorry to interrupt you, but I want to focus you. The most recent case is Walden versus Fiori, the opposing counsel referred to, and it says you can't have the plaintiff be the link. Burger King has a little bit of that flavor, pardon the pun, but Burger King has a little bit of that, but I haven't looked at it. But let's go by Walden because Walden is the Supreme Court in 2014, that the plaintiff can't be the link. And we have a case that says the choice of law provision is insufficient to confer personal jurisdiction. That's correct. What do we have? Well, so we have Burger King and we have St. Paul Fire and Marine that says you look at the agreement and you look at the obligations that are created under that agreement. And here we have sufficient obligations. It's a long-term contract. These are the things that were pointed out in St. Paul Fire and Marine. A long-term contract, seven years. They had obligations to Federated Mutual. Is your St. Paul the district court case you're referring to? Yes, I'm referring to the district court case. Oh, okay. I thought it was an Eighth Circuit case. I couldn't find it. The Eighth Circuit case, I'm sorry, the Eighth Circuit case only dealt with the implied consent. Right. And so I'm going back, which this court, the Eighth Circuit, did not address. Right. So that was not an issue there. Our closest case is the 3M case, Minnesota Mine and Manufacturing versus Nippon Carbide. And that one, the contract was negotiated here. You don't think this was negotiated here, right? That's not alleged. Right. Again, the defendant does not have to show up in the state for that to be necessary. The agreement was negotiated, and it was negotiated via email. Yeah. But again, the plaintiff's here. We're back to Walden. Again, the plaintiff's here, but not the defendant, right? The plaintiff is here, yes. Right, but not the defendant. Right. And I think here, too, to look also at the fact that this bad action, the bad faith and unfair action that was found by the arbitrator, which we pled in our statement of claims, was directed towards a Minnesota resident. It was intentionally directed towards a Minnesota resident. A Minnesota resident was harmed in Minnesota. And that, together with the obligations under the agreement, creates enough that FedNet should not have been surprised at being called into court in Minnesota. Now, do you have another case pending in Illinois? I'm confused by that. Tell me. Yes. So FedNet brought, after we brought the motion to confirm in Minnesota, they brought a motion to confirm, vacate, and modify, I believe, in the Northern District of Illinois. And they don't do business there, but you do. Well, we do business in pretty much every state. Yeah, I know. But they don't do business there, right? They do not. If I read their states right? They do not do business in Illinois. But they picked that for them, right? They picked that for them, yes. Okay. Go ahead and proceed. Yes. So unless you have any other questions about personal jurisdiction, then I'd like to talk a little bit more about the Vadin decision. And even though it did not directly address the Section 9 petition, it did give us some guidance to go by. And I think that, in this case, there's no controlling law for the Eighth Circuit, but what is most persuasive are the three other district courts that have seen or agreed to the look-back or look-through approach, and that would be the First, Second, and Fourth Circuits. And I would just direct this court to the McCormick decision, which is the most recent Fourth Circuit decision. It is very persuasive. It is well-reasoned and very thoughtful. And the Vadin court has given us guidance in three ways. They reiterate the fact that the Act itself does not extend jurisdiction. And I think, as you pointed out, Your Honor, if we were to allow Section 4 to have a look-through approach, but no other section in the Federal Arbitration Act, then that, in and of itself, means Section 4 is extending the jurisdiction. So this means if a party to get federal jurisdiction must file a motion to compel arbitration, if this party with the same exact underlying cause does not go through that step, they lose that federal jurisdiction ability. And so because of that, it makes more sense, if the Federal Arbitration Act itself does not extend jurisdiction, that that look-through approach must apply to all of the sections. And in addition, Vadin tells us that the Act should be read as a whole. We don't look at the individual mechanisms by themselves, but we look at the Act as a whole. And since jurisdiction was already provided in Section 4 with the look-through approach, then that means that Congress did not have to repeat itself in the following sections that that was already addressed in Section 4. Counsel, in the Vadin case, does Chief Justice Roberts, in his opinion, have others with him? Yes. How many do you know? So it was a 5-4 decision, I believe. But Roberts is concurring in part and dissenting in part. Yes. So you think he's with four? There are four on the dissent and concurrence, and I don't know how that split up. Oh, that's fine. But I will say... You think he has four. Go ahead. So the entire court agreed in the look-through approach. What they didn't agree with is what you look at, and that's what caused the dissent. So the majority thought you looked just at the pleadings of the plaintiff, and the remainder of the court thought you should look at the big picture. Because the Chief Justice is more plain about Section 4, doesn't have anything to do with jurisdiction, just the range of remedies available in federal courts. But you say he's the four for sure. Go ahead. And then the other thing that Vaden taught us was that you should look at the consequences, and they talk quite a bit. Justice Ginsburg, writing for the majority, talks a lot about the curious consequences, practical consequences that would occur. If we don't have the look-back approach or the look-through approach in Section 9, then that ends up with those same curious consequences. So we would have someone who could compel arbitration or start a federal litigation just to get federal jurisdiction. The same issues by different parties who chose not to go in that path, who chose not to involve the federal court or a court, which is what the arbitration is for, is to stay outside of court, would then lose the ability to confirm those awards in the end. And I would just point out that the two circuits that did not follow the look-through approach did so because of the absence of the language and also because they said a motion to compel should be given more weight than a motion to confirm. However, I mean, I think we show this here. We compelled arbitration. This case started out, the infringement case started out in the Southern District of Florida as a declaratory judgment action. At that time, we had federal jurisdiction, and we asked the court to stay and compel, and the court just dismissed the case. So this gives those curious consequences that we were in federal court, we went to arbitration, we can't come back to federal court to confirm it. I'd also like to just briefly address the well-pleaded complaint issue. So here, under Vaden, you would look back to the statement of claims in the arbitration, because in Vaden, they looked back to the state complaint. And I also want to respectfully disagree with opposing counsel that we did not include a federal question in our Section 9 petition. We don't think that matters here because we think the court can look back to our statement of claims. However, in our petition to confirm, we attached the arbitration award, and the arbitration award, and all we asked was for the court to confirm the award. We did not cherry-pick which issues we wanted confirmed. We just asked for the award to be confirmed, and we attached the award. And as I'm sure the court is well aware, if an attachment is to a pleading, it is considered part of the pleading. So there is a pleading. It was referenced in the pleading, right? Absolutely. Proceed. Yes, yes. So, and the... How you get to $75,000? Yes, I'd be happy to. That was just what I was turning to, Your Honor. So we know under Hanson v. Triangle that a trademark case is valued by the value of protecting the trademark owner's reputation and goodwill. And granted, there is no good way to put a value on that. And so what we said in our briefing and what we still claim is that one of the values is how much attorney's fees is a trademark owner willing to expend, and that gives you some count of what the value is of that brand. Here we have at issue the name of a 100-year-old company and over, like, 20 registrations at the U.S. Federal Trademark Office for marks that have the term federated in it. The jurisdictional threshold is only $75,000, and we only have to show that there's not a legal certainty that we haven't met that. And so I think here, given the three courts that we've been in, four counting this one, and the amount of money that's been spent in protecting the trademarks through registration and maintenance, it would be clear that we meet that threshold. Counsel, how strong is our capital indemnity corporation case? And I'm sorry, I'm not familiar with that case. I'm sorry, Your Honor. But it's also true if the defendant challenges the allegation of the amount in controversy, I'm paraphrasing the Supreme Court, then you have to establish by a preponderance of the evidence. Right. It sounds like there's got to be some evidence. And the evidence is what I just mentioned to you, and that's what we referred to, and that was in the record before the district court. And then the last thing I'd like to touch on is what is the substantive dispute here, and that's confirmation of the award. And as this court is well aware, although it's a de novo review of the district court confirmation, this court, like the district court, must give the arbitrator's decision an extraordinary level of deference. And here, in fact, as long as the arbitrator is arguably construing the party's agreement, then this court must confirm. And indeed, if there is a serious error of law or a serious error of fact, and under those circumstances, it still calls for confirmation of the award. Here, the arbitrator clearly backs up each one of his decisions and each one of his remedies that he puts forward based on the party's agreement. And the party's agreement gives him very broad authority. He had authority to issue any equitable or legal remedy, and it was based on the dispute of the parties with the contract. And so this is well within his authority to basically have FEDNAT comply with the agreement, do a specific performance, and just speed it up. And that was well within his authority to do that. And unless your honors have any other questions, then we just ask the court to affirm Judge Magnuson's order to confirm. Thank you. Thank you. No, you did use it all. If you really have something you'd like to get at, I'll give you one minute. One minute. Two things. One minute, though. Look at the petition at Joint Appendix 10. It says, we want a judgment confirming the award issued in petitioner's favor. So that's what they were looking to do. That's a contractual-based claim. The other thing I want to say, because I hadn't mentioned at all the exceeding the powers argument, the arbitrator exceeded his powers, is that the injunction was contrary to the scope of the party's agreement because that was a seven-year agreement, and the arbitrator imposed an injunction that had to be finished in 90 days. Also, what Federated Mutual had asked for in the arbitration is, don't let them use FedNet. Tell them they must use Federated National for the rest of the term of the agreement. And what did the arbitrator do? He said, you can't use Federated National. It was completely the opposite of what they asked for, and he said FedNet's okay. So I think it is pretty clear that what he did was not within the scope of the agreement. Thank you. Very well. Thank you.